IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|        Plaintiff,   ) | |
|           v.    ) | Civil Action No. 11-cv-213 (TJM)(DRH) |
| ADIRONDACK ENERGY PRODUCTS, INC.,  ) | |
| MOUNTAIN MART # 104, LLC,  ) | |
| MOUNTAIN MART # 105, LLC,  ) | |
| MOUNTAIN MART # 106, LLC,  ) | |
| MOUNTAIN MART # 107, LLC,  ) | |
| MOUNTAIN MART # 108, LLC,  ) | |
|        Defendants.  ) | |

**<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................ 2

II.     APPLICABILITY ............................................................................................... 3

III.    DEFINITIONS .................................................................................................... 4

IV.     CIVIL PENALTY ............................................................................................... 6

V.      COMPLIANCE REQUIREMENTS ................................................................... 7

VI.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS ................................... 12

VII.    REPORTING REQUIREMENTS ..................................................................... 17

VIII.   STIPULATED PENALTIES ............................................................................. 19

IX.     FORCE MAJEURE ........................................................................................... 25

X.      DISPUTE RESOLUTION ................................................................................. 27

XI.     INFORMATION COLLECTION AND RETENTION ..................................... 29

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......................... 31

XIII.   COSTS .............................................................................................................. 33

XIV.    NOTICES ........................................................................................................... 33

XV.     EFFECTIVE DATE ........................................................................................... 35

XVI.    RETENTION OF JURISDICTION ................................................................... 35

XVII.   MODIFICATION ........................................................................................... 3535

XVIII.  TERMINATION ................................................................................................ 36

XIX.    PUBLIC PARTICIPATION .............................................................................. 37

XX.     SIGNATORIES/SERVICE ............................................................................... 37

XXI.    INTEGRATION ................................................................................................. 38

XXII.   FINAL JUDGMENT ......................................................................................... 38

i

## CONSENT DECREE

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action against Defendant Adirondack Energy Products, Inc., Defendant Mountain Mart #104, Defendant Mountain Mart #105, Defendant Mountain Mart #106, Defendant Mountain Mart #107, and Defendant Mountain Mart #108 (collectively, "Defendants"), alleging that Defendants violated the Underground Storage Tank ("UST") regulations promulgated under Section 9003(a) and 9003(c)(1) of the Solid Waste Disposal Act, as amended by various laws including the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et. seq. (hereinafter collectively referred to as the "Act" or "RCRA"), and codified at 40 C.F.R. Part 280.

WHEREAS, the Complaint against Defendants alleges that Defendants have failed to satisfy numerous requirements mandated by Subtitle I of RCRA including: (1) failure to test cathodic protection systems in violation of 40 C.F.R. § 280.31(b); (2) failure to annually test automatic line leak detectors for pressurized pipes in violation of 40 C.F.R. § 280.41(b)(1)(i); (3) failure to install overfill prevention equipment in a new tank in violation of 40 C.F.R. § 280.20(c)(1); (4) failure to conduct annual line tightness tests or monthly monitoring of pressurized piping systems in violation of 40 C.F.R. § 280.41(b)(1)(ii); (5) failure to comply with release reporting, investigation and confirmation requirements in violation of 40 C.F.R. §§ 280.50-280.52; (6) failure to conduct release detection monitoring in violation of 40 C.F.R. § 280.41(a)(1); and (7) failure to maintain records of release detection monitoring in violation of 40 C.F.R. § 280.45.

1

WHEREAS, on November 2 and 3, 2011, EPA conducted an inspection of the seven Facilities named in the United States' Complaint and determined that Defendants were in substantial compliance with the UST Regulations at those Facilities at that time.

WHEREAS, Defendants do not admit any liability to the United States arising out of the occurrences alleged in the Complaint.

WHEREAS, The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and under Section 9006(a)(1) of the Solid Waste Disposal Act, as amended, 42 U.S.C. § 6991e(a)(1).

2.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and under Section 9006(a) of the Solid Waste Disposal Act, as amended, 42 U.S.C. § 6991e(a), because Defendants reside within this District and because the alleged violations in the Complaint occurred in this District.

3.   For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action to enforce this Decree, and over Defendants, and consent to venue in this judicial district.

4.   For purposes of this Consent Decree, Defendants agree that the Complaint

2

states claims upon which relief may be granted pursuant to Section 9006 of the Solid Waste

Disposal Act, as amended, 42 U.S.C. § 6901 et. seq. and the Underground Storage Tank

regulations promulgated under Section 9003(a) and 9003(c)(1) of RCRA, 42 U.S.C. §§ 6991b(a),

(c)(1), and codified at 40 C.F.R. Part 280.

## II. APPLICABILITY

5.     The provisions of this Consent Decree apply to and are binding upon the United

States, and upon Defendants, their officers, directors, employees, agents, successors and assigns,

or other entities or persons otherwise bound by law.

6.     Until Termination of this Consent Decree pursuant to Section XVIII, no transfer of

ownership or operation of the Facility, whether in compliance with the procedures of this

Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of

the Decree are implemented.  Any transfer of ownership or operation of any Facility subject to

this Consent Decree, as identified in Appendix A, to any other person or entity must be

conditioned upon the transferee's agreement to undertake or otherwise facilitate the obligations

required by this Consent Decree, as provided in a written agreement signed by EPA, Defendants

and the proposed transferee. At least 30 Days prior to such transfer, Defendants shall provide a

copy of this Consent Decree to the proposed transferee and shall simultaneously provide written

notice of the prospective transfer, together with a copy of the proposed written agreement, to

EPA Region 2, the United States Attorney for the Northern District of New York, and the United

States Department of Justice, in accordance with Section XIV of this Decree (Notices).  The

United States may refuse to approve the substitution of the proposed transferee for Defendant if

it determines that the proposed transferee does not possess the requisite technical abilities or

financial means to undertake the obligations required by this Consent Decree.  The United

3

States' decision to refuse to approve the substitution of the proposed transferee for a Defendant shall not be subject to judicial review. Any attempt to transfer ownership or operation of any Facility without complying with this Paragraph constitutes a violation of this Decree. No change in ownership, operation, or legal status of Defendants shall release Defendants from their continued performance under this Decree, including their obligation to perform the Supplemental Environmental Projects set forth in Section VI (Supplemental Environmental Projects).

7.    Defendants shall provide a copy of this Consent Decree, in hardcopy or electronic format, to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.    In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any action necessary to comply with the provisions of this Consent Decree.

## II.  DEFINITIONS

9.    Terms used in this Consent Decree that are defined in the Act or in regulations shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Complaint" shall mean the complaint filed by the United States in this action in the Northern District of New York.

b.    "Consent Decree" or "Decree" shall mean this Decree and the appendices attached hereto.

4

c. "Day" shall mean calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

d. "Defendants" shall mean Defendant Adirondack Energy Products, Inc., Defendant Mountain Mart #104, Defendant Mountain Mart #105, Defendant Mountain Mart #106, Defendant Mountain Mart #107, and Defendant Mountain Mart #108, as named in the Complaint.

e. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

f. "Effective Date" shall have the definition provided in Section XV.

g. "Facility" or "Facilities" shall mean the retail gasoline service stations and/or petroleum bulk storage stations, individually or collectively, that contain or at one time did contain Underground Storage Tanks owned and/or operated by Defendants and located in the Northern District of New York, as identified with more specificity in Appendix A, attached hereto.

h. "Interest" shall mean the interest rate specified in 28 U.S.C. § 1961.

i. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

j. "Parties" shall mean the United States and Defendants.

k. "Section" shall mean a portion of this Decree identified by a roman numeral.

5

l.   "SEP" or "Supplemental Environmental Project" shall mean the environmentally beneficial projects required by Section VI of this Decree and undertaken pursuant to EPA's Final SEP Policy (May 1, 1998).

m.   "Underground Storage Tank system" shall mean an underground storage tank, connected underground piping, underground ancillary equipment, and containment system, if any, as defined in 40 C.F.R. Subpart A, § 280.12.

n.      "United States" shall mean the United States of America, acting on behalf of the Environmental Protection Agency.

## IV.  CIVIL PENALTY

10.   Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $46,000 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11.    Defendants shall pay the civil penalty due by Fed Wire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of New York.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States of America v. Adirondack Energy Products, Inc., et. al., and shall reference the civil action number 11-cv-213 and DOJ case number 90-7-1-09900, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

6

EPA Cincinnati Finance Office
26 West Martin Luther King Drive
Attn: Finance, Mail Code NWD
Cincinnati, Ohio 45268

12.   Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## V. <u>COMPLIANCE REQUIREMENTS</u>

13.   Defendants shall comply with all requirements of RCRA and the UST regulations as alleged to have been violated in the Complaint at each Facility specified in Appendix A.

14.   Defendants shall install a fully automated electronic release detection monitoring equipment which shall meet the performance standards of 40 C.F.R. §§ 280.43 and 280.44 on the UST systems and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A.

a.   The installation of the fully automated electronic release detection monitoring equipment on each UST system and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A shall be completed no later than 90 days after the Effective Date of this Consent Decree.

b.   Defendants shall operate and maintain in good working condition the fully automated electronic release detection monitoring equipment required by this Paragraph for a minimum of three (3) years from the deadline for installation required by Paragraph 14(a).

c.   Defendants shall record all alarms in a log book, including, without limitation, those alarms arising from potential or suspected releases, spill or overfill of tanks, malfunction or failure of components, and disconnection of components. Defendants shall

7

provide summaries of information identified in this subparagraph in annual reports to EPA pursuant to Section VII (Reporting Requirements), Paragraph 42(c). In addition, upon the request of EPA, Defendants shall provide any information in their respective possession, custody or control obtained or recorded by the above-described electronic release detection monitoring equipment to EPA.

        d.     Within 24 hours of a suspected or actual release, spill, or overfill of a regulated substance, Defendants shall notify the New York State Department of Environmental Conservation ("NYSDEC"), as the state agency designated to receive reports and/or answer calls reporting suspected releases, and shall notify EPA in writing pursuant to Section XIV (Notices), of the suspected or actual release, spill or overfill. Defendants shall comply with the release reporting, investigation and confirmation requirements of 40 C.F.R. §§ 280.50 -280.52, and shall comply with the release investigation and confirmation requirements found at 40 C.F.R. § 280.52. Where appropriate, Defendants shall implement the release response and corrective action requirements of 40 C.F.R. Part 280 Subpart F. Defendants shall also implement any additional remedial activities required by EPA to address the suspected or actual release, spill, overfill, or to address any underlying condition(s) that EPA determined to have caused the suspected or actual release, spill or overfill.

        e.     Defendants shall maintain release detection monitoring records for the UST systems and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A, in the office of Defendants' Environment, Health and Safety Officer located at Defendants' principal place of business at 17 Junction Way, Malone, New York. Upon request, Defendants shall provide these records to EPA for inspection and review.

        f.     Defendants shall conduct annual line tightness tests consistent with the

8

UST regulations at 40 C.F.R. § 280.41(b)(1)(ii). For three (3) years from the date the electronic release detection monitoring equipment required by this Paragraph is installed, Defendants shall provide EPA with copies of the results of such annual line tightness test(s), where applicable, for the UST systems and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A.

g.  Defendants shall conduct annual line leak detector tests consistent with the UST regulations at 40 C.F.R. § 280.41(b)(1)(i). For three (3) years from the date the electronic release detection monitoring equipment required by this Paragraph is installed, Defendants shall provide EPA with copies of the results of such annual line leak detector tests(s), where applicable, for the UST systems and associated piping owned and/or operated by Defendants at each Facility listed.

h.  Defendants shall conduct cathodic protection tests consistent with the UST regulations at 40 C.F.R. § 280.31(b) and (d). For three (3) years from the date the electronic release detection monitoring equipment required by this Paragraph is installed, Defendants shall provide EPA with copies of the results of such cathodic protection tests, where applicable, for all UST systems and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A.

i.  Defendants certify by signing this Consent Decree that all cost information provided to EPA in connection with the electronic release detection system is complete and accurate.

15. Defendants certify by signing this Consent Decree that they have installed overfill prevention equipment that complies with the requirements of the UST regulations found at

40 C.F.R. § 280.20(c)(1) on two UST's that were installed on June 29, 2005, and that are owned and/or operated by Mountain Mart #106.

16. This Consent Decree in no way revises or negates Defendants of their responsibility to also comply with all applicable federal, state, and /or local laws, regulations, and/or permits at all times. Compliance with this Consent Decree shall not constitute a defense to any action pursuant to said laws, regulations, or permits.

17. <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:

    a)  approve the submittal;

    b)  approve the submittal upon specified conditions;

    c)  approve part of the submittal and disapprove the remainder; or

    d)  disapprove the submittal .

18. If the submittal is approved pursuant to Paragraph 17 a., Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other documents, as approved. If the submittal is conditionally approved or approved only in part, pursuant to Paragraph 17 b. or c., Defendants shall, upon written direction from EPA, take all actions required by the approved plan or report. If EPA determines that approved portion(s) of the submittal are technically severable from any disapproved portions, Defendants shall, upon written direction from EPA, take all actions required by the approved portion(s).  Defendants may dispute only the specified conditions or the disapproved portions, under Section X of this Decree (Dispute Resolution).

19. If the submittal is disapproved in whole or in part pursuant to Paragraph

17c. or d, Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmittal is approved in whole or in part, Defendants shall proceed in accordance with the requirements of the preceding Paragraph.

20. Any stipulated penalties applicable to the original submittal, as provided in Section VIII of this Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmittal is provided untimely or is disapproved in whole or in part; provided that, if EPA determines that the original submittal was so deficient as to constitute a material breach of Defendants' obligations under this Decree, EPA shall notify Defendants of that determination and the stipulated penalties applicable to the original submittal shall be due and payable notwithstanding any subsequent resubmittal.

21. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties, as provided in the preceding Paragraphs and in Section VIII (Stipulated Penalties).

22. Permits. Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. If Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals, Defendants may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the

11

performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation.

## VI. SUPPLEMENTAL ENVIRONMENTAL PROJECTS

Defendants shall implement three Supplemental Environmental Projects ("SEP"), identified as SEP1, SEP2 and SEP3, in accordance with the provisions of this Consent Decree.

### A. Centralized Monitoring System SEP ("SEP 1")

23.   Defendants shall install centralized monitoring equipment on the UST systems and associated piping at each Facility identified in Appendix A that shall collect all data generated by the release detection monitoring equipment required by Section V.14. of this Decree and electronically transmit it to one central location, as provided in Appendix B of this Consent Decree.  Defendants shall install and commence operation of the centralized monitoring equipment required by this Paragraph no later than 90 days after the Effective Date of this Consent Decree.

24.   As described in Appendix B to this Consent Decree, Defendants shall install remote fuel management software on the UST systems and associated monitoring hardware at each Facility, identified in Appendix A, that shall collect all alarm data generated by the release detection monitoring equipment required by Section V.14. of this Decree and electronically transmit it to the handheld mobile devices of Defendants' Environment, Health and Safety Officer and Defendants' Systems and Equipment Manager.  Defendants shall install and commence operation of the remote fuel management software required by this Paragraph no later than 90 days after the Effective Date of this Consent Decree.

12

25.    For purposes of Paragraph 34 (SEP Completion Report), the deadline for completion of this SEP is 90 days after the Effective Date of this Consent Decree.

26.    Defendants shall operate and maintain in good working condition the centralized monitoring equipment and remote fuel management software described in Paragraphs 23 and 24, above, for a minimum of three (3) years from the commencement of operation.

27.    Within 30 days of the close of each calendar year for the three (3) calendar years following the Effective Date of this Consent Decree, Defendants shall submit a SEP1 Operation and Maintenance ("SEP1 O&M") report to the United States, in accordance with Section XIV of this Consent Decree (Notices). The SEP1 O&M Report shall contain the following information:

i.    a detailed description, including the date, time and all facts describing all O&M problems encountered in the reporting year, Defendants' responses thereto, and whether Defendants' response resolved the O&M problems encountered;

ii.    an itemized list of all costs expended by Defendants in operating and maintaining SEP1 for each of the three (3) calendar years; and

iii.    a certification that SEP1 O&M activities have been fully implemented during the reporting year pursuant to the provisions of this Decree.

**B.    Environmental Compliance Audit SEP ("SEP 2")**

28.    Within 120 days of installation of the centralized monitoring equipment and remote fuel management software required by Paragraghs 23 and 24, above, Defendants shall retain a third-party contractor who shall conduct an environmental compliance audit of each Facility identified in Appendix A, as provided for in Appendix C to this Decree.

29.    For purposes of Paragraph 34 (SEP Completion Report), the deadline for

13

completion of this SEP shall be no later than 120 days from the date of installation of the centralized monitoring equipment and remote fuel management software.

**C.   Regulated Community Outreach SEP ("SEP 3")**

30.    Defendants shall retain a third-party contractor to conduct one (1) community outreach seminar that shall educate regulated UST owners and/or operators located in the Northern District of New York on local, state, and federal regulations that apply to the operation and maintenance of UST systems, as provided for in Appendix D to this Decree.

31.    For purposes of Paragraph 34 (SEP Completion Report), the deadline for completion of this SEP shall be no later than one (1) year from the Effective Date of this Consent Decree.

**D.   General SEP Requirements**

32.    Defendants are responsible for the satisfactory completion of each SEP in accordance with the requirements of this Decree. Defendants may use contractors or consultants in planning and implementing each SEP.

33.    With regard to each SEP, Defendants certify the truth and accuracy of each of the following:

a.    that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that the Defendants in good faith estimate that the cost of each SEP is as follows:

i.    the cost for implementing SEP1 is at least $100,000.

ii.    the cost for implementing SEP2 is at least $4,500;

iii.    the cost for implementing SEP3 is at least $7,500.

14

b.     that, as of the date of executing this Decree, Defendants are not required to perform or develop the SEPs by any federal, state or local law or regulation and are not required to perform or develop the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any other forum;

c.     that the SEPs are not projects that Defendants are planning or intending to construct, perform, or implement other than in settlement of the claims alleged in the Complaint and as provided in this Decree;

d.     that Defendants are not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activities described in the SEPs, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA within two years of the date of this settlement (unless the project was barred from funding as statutorily ineligible). For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan, or other mechanism for providing federal financial assistance whose performance period has not yet expired;

e.     that Defendants have not received and will not receive credit for the SEPs in any other enforcement action; and

f.     that Defendants will not receive any reimbursement for any portion of the SEPs from any other person.

34.     <u>SEP Completion Report</u>

a.     Within 30 days of the deadline for completion of SEP1 (Paragraph 25), SEP2 (Paragraph 29) and SEP3 (Paragraph 31), Defendants shall submit a SEP Completion

Report to the United States for each SEP in accordance with Section XIV of this Decree

(Notices). Each SEP Completion Report shall contain the following information:

> i.   a detailed description of the SEP as implemented;

> ii.   a description of any problems encountered in completing the SEP and the

solutions thereto;

> iii.   an itemized list of all eligible SEP costs expended;

> iv.   certification that the SEP has been fully implemented pursuant to the

provisions of this Decree; and

> v.   a description of the environmental and public health benefits resulting

from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if

feasible).

35.     EPA may, in its unreviewable discretion, require information in addition to that

described in the preceding Paragraph, in order to evaluate Defendants' implementation of each

SEP.

36.     After receiving a SEP Completion Report, the United States shall notify

Defendants whether or not Defendants have satisfactorily completed each SEP. If Defendants

have not completed each SEP in accordance with this Consent Decree, stipulated penalties may

be assessed under Section VIII of this Consent Decree.

37.     Disputes concerning the satisfactory performance of any SEP and the amount of

eligible SEP costs may be resolved under Section X of this Decree (Dispute Resolution). No

other disputes arising under this Section shall be subject to Dispute Resolution.

38.     Each submittal required under this Section shall be signed by an official with

knowledge of the SEP and shall bear the certification language set forth in Paragraph 45.

39.     Any public statement, oral or written, in print, film, or other media, made by any Defendant, or by any officer, employee or agent of the Defendants, that makes reference to the SEPs under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *United States v. Adirondack Energy Products, Inc. et al.*, initiated on behalf of the U.S. Environmental Protection Agency under the Resource Conservation and Recovery Act."

40.     The United States agrees that for purposes of SEP 2 (Regulated Community Outreach) Defendants need not include the language quoted in Paragraph 39, above, in the Newspaper Advertisements described in Appendix D at subsection E.

41.     For federal income tax purposes, Defendants agree that they will not capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing each SEP.

## VII.   REPORTING REQUIREMENTS

42.     Defendants shall submit the following reports in hard copy or by electronic facsimile to the United States and the EPA:

a.      Within 30 Days after the end of each half year (i.e., by July 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII (Termination), Defendants shall submit a semi-annual report that shall include the status of any construction, installation, or compliance measures; problems encountered or anticipated, together with implemented or proposed solutions (including an implementation schedule for each proposed solution); status of any permit applications relevant to the implementation of this Consent Decree; operation and maintenance; and a discussion of Defendants' progress in satisfying their obligations in connection with SEP1 under Section VI of

17

this Decree including, at a minimum, a narrative description of activities undertaken; status of any construction or compliance measures, and a summary of costs incurred since the previous report.

        b.      Each semi-annual report shall include a summary of specific types of alarms that occurred during the past quarter, as required to be logged pursuant to Paragraph 14(c). The summary shall include information on alarms triggered when a unit is disconnected, when any sensors malfunctioned, or when there were suspected releases. The semi-annual report shall also include information as to the investigation undertaken in response to the above types of alarms, and any corrective actions undertaken.

        c.      If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States of such violation and its likely duration, in writing, within ten working days of the day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

        43.      Whenever any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree, or a condition arising at any Facility owned and/or operated by Defendants in the Northern District of New York, may pose an immediate threat to

the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

44.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

45.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.  This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

46.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations that may concurrently be required by RCRA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

47.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

48.     Defendants shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including, but not limited to, the reporting requirements of this Decree and the requirements of any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

49.     Late Payment of Civil Penalty

If Defendants fail to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $5,000.00 per Day for each Day that the payment is late.

50.     Compliance Milestones

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph b of this paragraph:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750.00 | 1st through 14th Day |
| $1,500.00 | 15th through 30th Day |
| $3,500.00 | 31st Day and beyond |

b.      Requirements:

i.      Install fully automated electronic release detection monitoring equipment on all UST systems and associated piping owned and/or operated by Defendants at each Facility identified in Appendix A required by Paragraph 14;

ii.     Install centralized monitoring equipment and remote fuel

management software that constitute SEP1 at each Facility identified in Appendix A required by Paragraphs 23 and 24;

      iii.    Operate the centralized release detection monitoring equipment for all UST systems and associated piping owned and/or operated by Defendants at each Facility listed in Appendix A for a period of three (3) years as required by Paragraph 14.b.;

      iv.    Operate the electronic monitoring and remote fuel management software that constitute SEP1 at each Facility identified in Appendix A required by Paragraph 26.

      v.    Provide written certifications of compliance with the requirements of Paragraph 14.c. - i. of this Consent Decree and submit such certifications annually to EPA in accordance with Section XIV of this Decree (Notices).

      c.    Defendants shall pay $500.00 per Facility per Day for each violation of the following requirements to supply records to EPA upon request:

      i.    Release detection monitoring records for UST systems and associated piping at each Facility for two years from the date the centralized monitoring system is installed and implemented;

      ii.    Annual line tightness test(s), where applicable, for UST systems and associated piping at each Facility;

      iii.    Annual line leak detector test(s), where applicable, for UST systems and associated piping at each Facility;

      iv.    Cathodic protection tests, where applicable, for UST systems and associated piping at each Facility.

      51.    <u>Reporting Requirements.</u>

The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th Day |
| $1,250.00 | 15th through 30th Day |
| $2,500.00 | 31st Day and beyond |

52.   SEP Compliance

a.   If Defendants fail to satisfactorily complete any SEP by the deadlines set for them in Paragraphs 23-41, above, Defendants shall pay stipulated penalties for each SEP for each Day for which Defendants fail to satisfactorily complete the SEP, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250.00 | 1st through 14th Day |
| $1,500.00 | 15th through 30th Day |
| $3,500.00 | 31st Day and beyond |

b.   If Defendants fail to implement SEP1, or halt or abandon work on SEP1, including the applicable three year requirement to operate and maintain SEP1 and to submit SEP1 O & M Reports as required by Paragraph 27, Defendants shall pay a stipulated penalty of $75,000. The penalty under this subparagraph shall accrue as of the date specified for completing SEP1 or the date performance ceases, whichever is earlier.

c.   If Defendants fail to implement SEP2, Defendants shall pay a stipulated penalty of $3,500. The penalty under this subparagraph shall accrue as of the date specified for completing SEP2 or the date performance ceases, whichever is earlier.

22

d.   If Defendants fail to implement SEP3, Defendants shall pay a stipulated penalty of $6,500. The penalty under this subparagraph shall accrue as of the date specified for completing SEP3 or the date performances ceases, whichever is earlier.

53.     For each SEP, if, at the completion of all SEP requirements Defendants fail to spend at least 90% of estimated SEP cost, Defendants shall pay a stipulated penalty as follows:

        a.     SEP1: $15,000

        b.     SEP2: $500

        c.     SEP3: $2000

54.     Except as provided in subparagraphs 50.a. and b., above, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall separately accrue for noncompliance with, or for violation of, the terms of this Consent Decree.

55.     Defendants shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand therefore.

56.      The United States may in the exercise of its unreviewable discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

57.      Stipulated penalties shall continue to accrue, as provided herein, during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing together with Interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.   If the dispute is appealed to the District Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.   If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

58.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

59.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

60.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.

24

## IX. **FORCE MAJEURE**

61.     "Force Majeure" for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

62.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Defendants first knew that the event might cause a delay. Within seven days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.

63.     Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors, knew or should have known.

64.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by force majeure event shall not, by itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

65.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

66.     If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 61 and 62, above.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

26

## X.  DISPUTE RESOLUTION

67.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

68.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 5 Days after the conclusion of the informal negotiations period, Defendants invoke formal dispute resolution procedures set forth below.

69.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

70.    .  The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any

27

supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

71.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute.  The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

72.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

73.    Standard of Review.

a.    Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 68 that is accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with the law.

28

        b.      <u>Other Disputes</u>.  Except as provided in this Consent Decree, in any other dispute brought under Paragraph 69, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and applicable law.

74.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides unless EPA agrees in writing otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 57.  If Defendants do not prevail on the dispute issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. **INFORMATION COLLECTION AND RETENTION**

75.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Consent Decree, at all reasonable times, to:

        a.      monitor the progress of activities required under this Decree;

        b.      verify any data or information submitted to the United States in accordance with the terms of this Decree;

        c.      take samples and, upon request, obtain splits of any samples taken by Defendants or their representatives, contractors, or consultants;

        d.      obtain documentary evidence, including photographs and similar data; and

        e.      assess Defendants' compliance with this Decree.

76.     Upon request, Defendants shall provide EPA, or its authorized representatives, splits of any samples taken by Defendants.  Upon request, EPA shall provide Defendants with splits of any samples taken by EPA.

77.     Until  three (3) years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession, custody or control, or that come into their or their contractors' possession, custody or control, and that relate in any manner to Defendants' performance of their obligations under this Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

78.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information, are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or

30

information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants.

79. No documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege. This shall include, but is not limited to, documents Defendants are required to provide to EPA pursuant to Section XIV (Notices) of this Consent Decree.

80. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

81. This Consent Decree in no way limits or affects any right of entry an inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulation, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

82. Entry of this Consent Decree shall resolve the civil claims of the United States for the violations alleged in the United States' Complaint that occurred through the date of lodging of the Consent Decree.

83. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 82. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or

injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 82.

84.    The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

85.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or to Defendants' alleged violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppels, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 82 of this Section.

86.    This Consent Decree is not a permit or a modification of any permit issued or obtained pursuant to any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws and regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree constitutes compliance with provisions of the Act, or with any other provisions of federal, state, or local laws, regulations or permits.

32

87.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

88.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

89.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect its costs, including reasonable attorneys' fees, incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants, or to enforce the obligations of this Consent Decree.

## XIV.  NOTICES

90.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-7-1-09900
and

To EPA:

33

UST Team Leader
U.S. Environmental Protection Agency
Region 2
Division of Enforcement and Compliance Assistance
290 Broadway
New York, New York 10007-1866


For notifications, submissions or communications required to be made to EPA pursuant to
Section IX (Force Majeure) of this Decree:

Dennis McChesney
Team Leader, UST Team
EPA Region 2
McChesney.Dennis@epamail.epa.gov
Voice: (212) 637-4232
Fax: (212)637 4211


To Defendants:

Bruce A. Monette, Jr.
President
Adirondack Energy Products, Inc.
17 Junction Road
P.O. Box 355
Malone, New York
(518) 483 -3835
BMonettejr@aol.com

Jeff Rosenfield
Environment, Health and Safety Officer
Adirondack Energy Products, Inc.
17 Junction Road
P.O. Box 355
Malone, New York 12953
(518) 483-3835
Jeff@adirondackenergy.com

John J. Privitera, Esq.
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway, Suite 500
Albany, New York
(518) 447-3337
Privitera@mltw.com

91.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

92.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. **EFFECTIVE DATE**

93.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent to Decree is granted, whichever occurs first, as recorded in the Court's docket.

## XVI. **RETENTION OF JURISDICTION**

94.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. **MODIFICATION**

95.     The terms of this Consent Decree, including the attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

96.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided in Paragraph 73, the Party seeking modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

97.     After Defendants have completed the requirements of Section V (Compliance Requirements), Section VI (Supplemental Environmental Projects), and Section VII (Reporting Requirements) of this Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination of the Consent Decree.  In that Request, Defendants must state that they have satisfied all requirements of the Decree, and provide necessary supporting documentation.

98.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

99.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree.  However, Defendants shall not seek Dispute Resolution under Paragraph 68 of Section X of any dispute regarding termination, until 60 days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

100.   This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent to entry of this Decree if comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. This Consent Decree is also subject to e.g., opportunity for public meeting under RCRA Section 7003(d), 42 U.S.C. § 6973(d). Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

101.   Each undersigned representatives of Defendants and of the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

102.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules or this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

103.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied therein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

104.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

Dated and entered this 29th day of ___April___, 2013.

UNITED STATES DISTRICT JUDGE
Northern District of New York

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
Date

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

2/26/13
Date

SUSAN M. AKERS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-4831

FOR U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date   2/13/13

ERIC SCHAAF
Regional Counsel
Region 2
U.S. Environmental Protection Agency

40

FOR DEFENDANTS ADIRONDACK ENERGY PRODUCTS, INC.; MOUNTAIN MART # 104, LLC; MOUNTAIN MART # 105, LLC; MOUNTAIN MART # 106, LLC; MOUNTAIN MART # 107, LLC; and MOUNTAIN MART # 108, LLC:

2/20/13
Date

_____
BRUCE MONETTE
President, Adirondack Energy Products Inc.
17 Junction Road
Malone, New York

02/21/13
Date

_____
JOHN PRIVITERA, Esq.
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway, Suite 500
Albany, New York

## APPENDIX A

## FACILITIES SUBJECT TO THE CONSENT DECREE

For purposes of the Decree, "Facility" or "Facilities" shall mean the retail gasoline service stations and/or petroleum bulk storage stations, individually or collectively, identified below.  Defendants agree that each Facility identified below is subject to the terms of this Consent Decree.

1.   **Adirondack Energy Products, Inc.**
     17 Junction Road
     Malone, New York

2.   **Adirondack Energy Products, Inc.**
     25 Monroe Way
     Plattsburgh, New York

3.   **Mountain Mart # 104**
     3414 West Main Street
     Malone, New York

4.   **Mountain Mart # 105**
     371 South Main Street
     Massena, New York

5.   **Mountain Mart #106**
     103 East Main Street
     Canton, New York

6.   **Mountain Mart # 107**
     3 Spaulding Avenue
     Malone, New York

7.   **Mountain Mart # 108**
     881 Route 11
     Moira, New York

8.   **Mountain Mart #109**
     7155 Route 9
     Plattsburgh, New York

9.   **New Facilities**

     **Defendants agree to install the centralized monitoring equipment and remote fuel management software which together constitute SEP1 at any new Facility(ies) that Defendants come to own and/or operate before termination of the Consent Decree.**

## APPENDIX B

### CENTRALIZED MONITORING SYSTEM SUPPLEMENTAL ENVIRONMENTAL PROJECT

Defendants shall install, operate and maintain a centralized monitoring system that collects data generated by the release detection monitoring equipment on Defendants' USTs and electronically transmits it to one central location and to the handheld mobile devices of Defendants' EHS Officer and Defendants' Systems and Equipment Manager, pursuant to the requirements of Section VI.A. of this Decree, and in accordance with the specifications and criteria identified in this Appendix.

**A.      Equipment:**   The centralized electronic monitoring system shall be installed at each Facility identified in Appendix A, and shall be equipped with the following equipment:

1.      Centralized Monitoring Equipment:  Instruments capable of transmitting by standard Ethernet connection data generated by the release detection monitoring equipment installed pursuant to Section VI.14. of the Decree, including but not limited to:

Ethernet Port Server Consoles at each Facility with associated monitoring hardware

Interface Ethernet Port Server Modules on existing tank sensors

Configure Ethernet Port Server Modules to Ethernet connection at each Facility (with internet access to be supplied by each Facility)

Program tank monitors to communicate with Ethernet Port Server system

2.      Remote Fuel Management Software:  Software compatible with existing UST-monitoring hardware, such as Franklin Systems Sentinel or equivalent software, and capable of collecting data generated by the release detection monitoring equipment installed pursuant to Section VI.14. of the Decree, and transmitting it in real-time to handheld mobile devices.

**B.      Performance Requirements:**

3.      The centralized monitoring equipment shall be capable of sounding both audible and visible alarms on the equipment's consoles to alert Facility personnel of any alarm conditions that the installed sensors detect.

4.      The centralized monitoring equipment must be capable of collecting all data generated by the release detection monitoring equipment installed pursuant to Section V.14.a. of this Decree from each Facility and electronically transmitting it to monitoring console located in the Office of Defendants' Environment, Health and Safety Officer at 17 Junction Road, Malone, New York ("Central Office").  All data shall mean all data required to be generated by Section V.14.b -i. of the Decree, including but not limited to release detection monitoring reports for each UST system and its associated piping, alarm data, inventory reconciliation data, line tightness test data, and line leak detector test data.

5.      The remote fuel management software must be capable of collecting, in real-time, all "FUEL ALARM," "ALARM," or "ACTIVE," data collected by the release detection monitoring equipment installed pursuant to Section V.14.a. of the Decree, and electronically

transmitting it to the handheld-mobile devices of Defendants' Environment, Health and Safety Officer and Defendants' Systems and Equipment Manager.

      6.    If "FUEL ALARM," "ALARM," "ACTIVE" data, or other condition that may indicate a release of a regulated substance, is reported, Defendants shall immediately investigate the "Fuel Alarm," "Alarm," "Active" data or other condition in accordance with the "system test" or "site check" procedures laid out in 40 C.F.R. § 280.52. Where Defendants' investigation into the "Fuel Alarm," "Alarm," "Active" data or other condition indicates a potential release of a regulated substance, Defendants must contact response personnel at the New York State Department of Environmental Conservation within 24 hours and shall address the condition and conduct any necessary response and repair work in accordance with the requirements set forth at 40 C.F.R. §§ 280.50-280.52.

**C.**    **Operation:** Defendants shall operate and maintain in good working condition the centralized monitoring equipment and remote fuel management software described herein in accordance with manufacturers' recommendations for a period of no less than three (3) years from the Effective Date of this Consent Decree. Defendants shall submit Operation and Maintenance Reports to the United States in accordance with Paragraph 27 of Section VI.A of the Decree.

**D. Record Retention:** All reports and data generated by release detection monitoring equipment at each Facility shall be electronically transmitted to the Central Office and shall be retained at the Central Office for a minimum of five (5) years from the date such report was generated.

# APPENDIX C

## COMPLIANCE AUDIT SUPPLEMENTAL ENVIRONMENTAL PROJECT

Defendants shall retain a third-party contractor who shall conduct an environmental compliance audit of each Facility identified in Appendix A.

**Third-Party Contractor:**   Defendants shall retain a third-party contractor agreed to in writing by EPA to conduct an environmental compliance audit of each of Facility identified in Appendix A.

**Deadline for Completion:**  Defendants shall ensure the environmental compliance audits are conducted within 120 days from the date of installation of the centralized monitoring system required by Section VI.B. of the Decree, but no later than  September 1, 2014.

**Audit Requirements:**  Defendants shall ensure that the environmental compliance audits conducted by the third-party contractor evaluate: (1) Defendants' installation, operation, and maintenance of the release detection monitoring equipment required by Paragraph 14.a. of Section V., and the centralized monitoring system required by Paragraphs 23 and 24 of Section VI.A, of this Decree at each Facility; and (2) Defendants' compliance with applicable UST regulations at each Facility.

Defendants shall ensure that the compliance audits of each Facility are conducted in accordance with EPA's *Protocol for Conducting Environmental Compliance Audits of Storage Tanks under the Resource Conservation and Recovery Act*, available online at: http://www.epa.gov/region2/capp/cip/rcra.htm

**Compliance Reports:**  Defendants shall ensure the generation of a Compliance Report for each Facility that shall provide a narrative description of and results for the environmental compliance audit at each Facility, including any violations of local, state or federal law or regulation observed during the compliance audit.  Defendants shall also ensure that a New York State Department of Environmental Conservation - Petroleum Bulk Storage Inspection Form is generated during the audit of each Facility.  Defendants shall submit these reports in addition to a SEP Completion Report required by Paragraph 34 of Section VI.D. of the Decree.

**APPENDIX D**

**REGULATED-COMMUNITY OUTREACH SEMINAR SUPPLEMENTAL
ENVIRONMENTAL PROJECT**

Defendants shall finance and host one (1) community-outreach seminar that shall educate regulated UST owners and/or operators in the Northern District of New York region about local, state, and federal regulations that apply to the operation and maintenance of Underground Storage Tanks.

**A.      Date and Location:**  Defendants shall host this community-outreach seminar no later than one (1) year from the Effective Date of this Consent Decree.  Within this timeframe, Defendants may select the exact date upon which to host this seminar.

**B.      Third-Party Contractor:**  Defendants shall finance a third-party contractor agreed to in writing by EPA to conduct the community-outreach seminar.

**C.      Agenda and Teaching Materials:** Defendants shall provide a proposed agenda and teaching materials for the community-outreach seminar to EPA at least forty-five (45) days in advance of the seminar, the contents of which are subject to approval by EPA.

1.      Defendants shall ensure that the community-outreach seminar includes a detailed review of:  (1) the Resource Conservation and Recovery Act; 42 U.S.C. §§ 6901 et. seq., and the implementing regulations set forth at 40 C.F.R. Part 280 (Technical Standards and Corrective Action Requirements for Owners and Operators of Underground Storage Tanks); and (2) Article 17, Title 10 of the Environmental Conservation Law (ECL) and implementing New York State Petroleum Bulk Storage regulations at 6 NYCRR Parts 613 and 614.

2.      Defendants are responsible to ensure that the community-outreach seminar includes discussion of the key compliance requirements of the UST regulations identified above, including discussion of release detection monitoring, testing, record keeping, and reporting obligations under the relevant regulatory schemes.

3.      At the seminar, Defendants shall use as Teaching Materials, and make available to participants in print form, at least the following documents:

(1) *Operating and Maintaining Underground Storage Tanks: Practical Help and Checklists*, available online at: http://www.epa.gov/oust/pubs/ommanual.htm

(2) *Musts For USTs: A Summary of the Federal Regulations for Underground Storage Tanks*, available online at:  http://www.epa.gov/swerust1/pubs/musts.htm

(3) *Underground Storage Tank Operator Training Guidelines*, available online at: http://www.epa.gov/oust/fedlaws/optraing.htm

**D.      Notice to the Regulated Community:**  Defendants shall obtain from the New York State Department of Environmental Conservation ("NYSDEC") a mailing list of all UST-regulated entities in NYSDEC Regions 5 and 6.  At least twice in the thirty (30) days preceding the date of the seminar, Defendants shall mail flyers describing the time, date, and location of the scheduled seminar to each regulated entity on the NYSDEC mailing list.

**E.      Newspaper Advertisements:**  Defendants shall advertise the community-outreach seminar at least three (3) times within the thirty (30) days preceding the date of the scheduled seminar.

Defendants shall pay to advertise the community-outreach seminar in: (1) the Press Republican newspaper; (2) the Malone Telegraph newspaper; and (3) a local trade paper to be agreed to in writing by the Parties.

**F.      Website Advertisement:**  Defendants shall advertise the time, date and location of the community-outreach seminar on the homepage of its website for a period of at least thirty (30) days in advance of the date of the scheduled seminar.

**G.      Sign-In Rooster:**  Defendants shall open the community-outreach seminar to all interested members of the Northern District of New York community, but shall target with its outreach efforts those regulated entities that own and/or operate USTs.  Defendants shall keep a sign-in roster of all individuals who attended the seminar and, where applicable, the name of the company each individual works for.  Defendants shall submit a copy the sign-in roster to EPA within ten (10) days of the date of the seminar.

**H.      Costs:**  The costs for this SEP shall exclude costs for training any person employed in any capacity by the Defendants.